IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01979-MSK-MEH

JAMES R. DUNCAN,

    Plaintiff,
v.

LIEUTENANT MAGELSSEN, and
CAPTAIN WATTS,

    Defendants.
_____

**OPINION AND ORDER GRANTING, IN PART,
MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION IN LIMINE**
_____

**THIS MATTER** comes before the Court pursuant to the Defendants' Motion for Summary Judgment **(# 33)** and Mr. Duncan's response **(# 35)**; Mr. Duncan's "Motion to Order the Defendants to Stop Harassing the Plaintiff's Witnesses" **(# 56)**; and Mr. Duncan's Motion In Limine **(# 57)**.

**FACTS**

Mr. Duncan is an inmate of the Colorado Department of Corrections ("CDOC"), and at all times relevant herein, was housed at the Sterling Correctional Facility. He alleges that on seven[1] occasions in the first half of 2006, Mr. Magelssen, a Corrections Officer, sexually assaulted him in the course of conducting a pat-down search. As Mr. Duncan's Complaint **(# 3)**

---

[1] Mr. Duncan's Complaint **(# 3)** alleges that he was assaulted "over 8 eights times." The parties' amended proposed Pretrial Order **(# 54)**, which supersedes the pleadings, lists seven dates on which the alleged assaults occurred.

1

states, Mr. Magelssen "puts his hand on [Mr. Duncan's] penis and doesn't remove it but just keeps pla[y]ing with it."  Mr. Duncan filed administrative grievances regarding some or all of these instances.

On February 28, 2006, Mr. Duncan was charged with "fraud," a violation of the Code of Penal Discipline ("COPD").  Specifically, the charging CDOC employee stated that on that date, Mr. Duncan" approached me and stated that LT Magelssen [sic] had molested him.  Inmate Duncan has a history of claiming that officers have molested him when they are patting him down."  Following a hearing on March 22, 2006, in which Mr. Duncan, Mr. Magelssen, and two other corrections officers testified, Mr. Duncan was found guilty of having made a "false claim [ ] to staff," and was sentenced to 10 days of punitive segregation and the loss of 13 days of good time.

On May 9, 2006, Lieutenant Harms filed an incident report indicating that Mr. Duncan had again reported that Mr. Magelssen had grabbed his scrotum and squeezed it during a pat-down search.  Lt. Harms' report was given to Mr. Watts, the Captain in charge of the shift, and Mr. Watts interviewed Mr. Duncan regarding the allegations.  Based on that discussion, as well as Mr. Watts' knowledge of the fact that Mr. Duncan had previously been convicted of a COPD violation for making false statements about Mr. Magelssen assaulting him, Mr. Watts concluded that it was necessary to remove Mr. Duncan from the general population to prevent him from "spreading unfounded rumors about Lt. Magelssen" and "imped[ing] Lt. Magelssen's ability to perform his job."  Mr. Watts denies that the removal was the result of Mr. Duncan filings grievances against Mr. Magglesen.

Mr. Duncan was removed from the general population a second time on or about May 19, 2006. Lieutenant Morkert filed an incident report stating that Mr. Duncan's cellmate had reported that Mr. Duncan had stated he was going to stab Mr. Magelssen. Upon receiving this report, Mr. Watts directed that Mr. Duncan be strip searched and his cell searched to determine if he had a weapon. However, the decision to remove Mr. Duncan from the general population as a result of this incident was made by another official several days later.

Based on these facts, the Court ascertained that Mr. Duncan had asserted four claims: (i) that Mr. Magelssen violated his Eighth Amendment right to be free of cruel and unusual punishment by sexually assaulting him on one or more occasions; (ii) that Mr. Watts demonstrated deliberate indifference to his Eighth Amendment rights by failing to meaningfully investigate the possibility that Mr. Magelssen was assaulting him; (iii) that Mr. Watts violated his First Amendment rights by retaliating against him for filing grievances against Mr. Magelssen; and (iv) that both Defendants deprived him of Substantive Due Process in his COPD hearing by destroying allegedly exculpatory evidence – namely, videotapes of a pat-down search of Mr. Duncan by Mr. Magelssen.

The Defendants move for summary judgment (# 33) arguing: (i) with regard to the Eighth Amendment claim against Mr. Magelssen, Mr. Duncan cannot show that any sexual assault occurred; (ii) with regard to the Eighth Amendment claim against Mr. Watts, Mr. Duncan cannot show that he was exposed to a serious risk of harm (insofar as no sexual assaults by Mr. Magelssen were actually occurring), nor can he show that Mr. Watts' investigation into his allegations was so insufficient as to reflect deliberate indifference; (iii) with regard to the First Amendment retaliation claim, Mr. Duncan cannot show that his filing of grievances was

protected First Amendment activity, that the removal from general population was a punishment likely to chill the First Amendment activity of a reasonable person, or that his grievances were the "but for" cause of Mr. Watts' decision to remove him from general population; and (iv) with regard to the Substantive Due Process claim, Mr. Duncan's claim is barred by the doctrine of collateral estoppel, in that a claim brought by Mr. Duncan in the state courts concerning this issue was conclusively resolved against him, and alternatively, that Mr. Duncan cannot show that either Defendant destroyed any evidence.

Mr. Duncan has filed several motions (**# 56, 57**) in anticipation of the scheduled trial in this matter. The Court will address the specific contents of these motions in its analysis.

## ANALYSIS

### A. Standard of review

Mr. Duncan pursues this matter *pro se*. Accordingly, the Court liberally construes his pleadings. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). In other words, if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall*, 935 F.2d at 1110. However, the requirement that the Court read the Plaintiff's pleadings broadly does not relieve the Plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. *Id.* In this substantive respect, he is held to the same standards as any attorney practicing before the Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

4

With regard to the Defendants' Motion for Summary Judgment, Fed. R. Civ. P. 56 facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Where, as here, the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Summary judgment motion**

    1. <u>Eighth Amendment claim against Mr. Magelssen</u>

The Eighth Amendment to the U.S. Constitution ensures that prisoners are not subjected to cruel or unusual punishments. It is apparent that an inmate's Eighth Amendment rights include the right to be free from sexual assaults committed by prison guards. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008), *citing Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Ordinarily, proof of an Eighth Amendment claim requires a showing of both an objectively unreasonable punishment imposed on a prisoner and a sufficiently culpable objective state of mind by the defendant. *Id.* Here, Mr. Magelssen challenges only the first element, essentially arguing that Mr. Duncan cannot prove that an assault actually occurred.

Mr. Magelssen does not dispute that Mr. Duncan has offered his own affirmative testimony that, on several occasions, Mr. Magelssen went beyond the ordinary physical contact occasioned by a pat-down search and actually fondled Mr. Duncan's penis or testicles. However, Mr. Magelssen argues that the Court should not treat Mr. Duncan's allegations as true for purposes of this motion because of a collection of evidence that casts doubt on Mr. Duncan's credibility: (i) the COPD hearing concerning Mr. Duncan's allegations of an assault on May 9, 2006 resulted in a finding that Mr. Duncan's allegations were fraudulent; (ii) a video recording of the May 9, 2006 incident is inconsistent with Mr. Duncan's description of the event; (iii) Mr. Duncan's allegations that Mr. Magelssen assaulted him on February 28, 2006 and March 1, 2006 resulted in additional COPD charges of fraud, for which Mr. Duncan was found guilty after a hearing; and (iv) two Corrections Officers who were present during one or both of the searches

in February and March 2006 confirm that Mr. Magelssen did not engage in any inappropriate touching of Mr. Duncan.

It is axiomatic that assessing the relative credibility of witnesses, weighing the evidence, and drawing inferences from the facts are functions exclusively reserved to a jury and are not to be performed by the Court in consideration of a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 242; *Fogarty v. Gallegos*, 523 F.3d 1147, 1165-66 (10th Cir. 2008) ("the court may not grant summary judgment based on its own perception that one witness is more credible than another; these determinations must be left for the jury"). The Court is required to believe the evidence as put forward by the non-movant – Mr. Duncan – and to draw all reasonable inferences in his favor. *Id.* The Court can disregard evidence proffered by a non-movant only in very limited situations; for example, where the non-movant tenders a statement that is inconsistent with that witness' own prior sworn statements (thus creating a "sham fact issue"). *Burns v. Bd. of County Comm'rs*, 330 F.3d 1275, 1282 (10th Cir. 2003).

The Defendants cite to *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007), for the proposition that the Court can rely upon the video recording of the May 9, 2006 incident in order to reject Mr. Duncan's allegations. In *Scott*, the Court noted that the parties had presented differing versions of an event at the summary judgment stage of a civil case, but the Court found that the non-movant's version of events was fundamentally inconsistent with a videotape recording of those same events. In doing so, it appeared to announce a modification to the general rule that the Court should not weigh credibility at the summary judgment stage: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment." *Id.* The Court went on to find that the non-movant's "version of events is so utterly discredited by the record that no reasonable jury could have believed him," and that the court hearing the summary judgment motion "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.*

This Court finds that the video recording at issue is not akin to the recording in *Scott*. The video recording presented to the Court shows the May 9, 2006 incident as viewed from a security camera a significant distance away, and, as a result, the figures of what one assumes are Mr. Duncan and Mr. Magelssen occupy a tiny portion of the screen area. Although a viewer can discern that a pat-down search is taking place and recognize gross movements by Mr. Magelssen, the details of where Mr. Magelssen is actually making physical contact with Mr. Duncan are not readily observable owing to image size, the low resolution of the video recording, the pixelization resulting from compression of that video, and the low frame rate of the recording. The Court cannot say that the video recording "blatantly contradict[s]" Mr. Duncan's version of events.[2] *See e.g. York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (denying defendants' summary judgment motion where audiotape of incident was

---

[2]The parties agree that Mr. Duncan had previously testified that Mr. Magelssen's grabbing of his genitals caused him to "jump." The video recording does not reveal any gross movement by Mr. Duncan during or after the search (he appears to simply walk away after the search finishes). The Court does not necessarily assume that Mr. Duncan's "jump" in reaction was necessarily of the sort that would be ascertainable over the constraints of the video recording, and in any event, even assuming that Mr. Duncan's testimony was inconsistent with the video record in some details (e.g. the "jump," the direction in which Mr. Magelssen was patting when the contact occurred) does not warrant a conclusion that <u>all</u> of Mr. Duncan's contentions are untrue. Whether Mr. Duncan's errors in some aspects of his story warrants disbelief of other aspects is a quintessential question of credibility to be left to a jury.

8

incomplete and occasionally unintelligible and could not be said to "blatantly contradict" the plaintiff's version of the events).

In any even, even assuming the video record conclusively refuted Mr. Duncan's allegations with regard to the May 9, 2006 incident, Mr. Duncan alleges that Mr. Magelssen assaulted him on numerous other occasions, any one of which could be independently actionable. Although the Defendants argue that Mr. Duncan was found guilty of making false accusations in violation of the COPD with regard to some – but not all – of these incidents is not determinative of the truth of his assertions here, and indeed, the Defendants do not argue that the COPD determinations are entitled to preclusive effect. Simply put, the question of whether Mr. Magelssen indeed assaulted Mr. Duncan is a matter that turns in large part on the relative credibility of the various witnesses, and is inappropriate for resolution on summary judgment. This claim must proceed to trial.

### 2. Eighth Amendment claim against Mr. Watts

Mr. Duncan's Eighth Amendment claim against Mr. Watts is on a somewhat different footing. To establish Mr. Watts' liability for deliberate indifference, Mr. Duncan must show: (i) that Mr. Duncan was exposed to a serious risk of harm from Mr. Magelssen; and (ii) that Mr. Watts subjectively knew of that risk and failed to take reasonable steps to alleviate it. *Tafoya*, 516 F.3d at 916. For purposes of this motion, the Court will assume that Mr. Duncan can establish the first issue. Mr. Watts does not dispute that he was subjectively aware of at least some of Mr. Duncan's allegations of assault at the hands of Mr. Magelssen, and thus, the question presented is whether Mr. Duncan has come forward with adequate evidence to show that Mr. Watts failed to take reasonable steps to address that risk.

9

The record reflects that Mr. Watts was advised of Mr. Duncan's claim regarding the May 9, 2006 incident by means of an incident report by Lt. Harms. The precise manner in which Mr. Watts responded to the incident report is not entirely clear from his affidavit. He states that he "determined that [Mr. Duncan's] claims did not have merit, based on the fact that he previously made this type of claim against Lt. Magelssen, which, after investigation, were determined to be unfounded or fraudulent," although the means and manner by which he made this "determin[ation]" are not explicated. He also states that he "interview[ed] Duncan sometime after reviewing Lt. Harms' report," and that "[b]ased on the report and my interview with Duncan, I determined that Duncan should be placed in segregation."

The Court finds that, on this record, there is a genuine dispute of facts as to whether Mr. Watts' investigation of Mr. Duncan's allegation was sufficient to defeat an allegation of deliberate indifference. The complete refusal of an official responsible for the care of a ward to investigate a claim by that ward of physical abuse can constitute deliberate indifference. *See e.g. Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1248 (10th Cir. 1999) (in Title IX context, involving failure to investigate student's claim of sexual harassment at the hands of fellow student). On the other hand, an investigation that is undertaken in good faith, but merely performed negligently, would not give rise to relief. *Gates v. Unified School Dist. No. 449*, 996 F.2d 1035, 1043 (10th Cir. 1993) (Title IX context). Mr. Watts does not indicate the nature of the investigation – if any – that he conducted before "determin[ing] that [Mr. Duncan's] claims did not have merit." Indeed, a plausible reading of Mr. Watts' affidavit is that he conducted no investigation whatsoever into Mr. Duncan's allegations, and simply rejected Mr. Duncan's claims out of hand because Mr. Duncan had "previously made" similar allegations that were

found to be unsupported.[3]  Based on this record, the Court cannot conclude that no genuine dispute of fact exists as to whether Mr. Watts conducted a meaningful inquiry into Mr. Duncan's complaint.  Accordingly, summary judgment to Mr. Watts on this claim is denied.

        3.  <u>First Amendment claim against Mr. Watts</u>

Mr. Duncan's third claim alleges that Mr. Watts retaliated against him – removing him from the general population on may 9, 2006[4] – for Mr. Duncan's exercise of his First Amendment right to file grievances against Mr. Magelssen.  To establish a claim for First Amendment retaliation, Mr. Duncan must show: (i) that he was engaging in constitutionally-protected activity; (ii) that he suffered an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that Mr. Watts' actions in imposing that injury were motivated by Mr. Duncan's protected activity.  *Buck v. City of Albuquerque*, 549 F.3d 1269, 1292 (10th Cir. 2008).   Mr. Watts challenges the sufficiency of Mr. Duncan's evidence on all three elements.

With regard to the first element, Mr. Watts argues that Mr. Duncan was not engaged in protected First Amendment activity.  It is well settled that prisoners' filing of grievances is

---

[3] The factfinder could reasonable conclude that Mr. Watts "interview[ing]" Mr. Duncan before deciding to discount his allegations adds nothing of substance to the question of whether Mr. Watts' investigation was remotely meaningful.  The affidavit gives no indication as to why, after interviewing Mr. Duncan, Mr. Watts concluded that his allegations were meritless, other than Mr. Watts' coordinate conclusion – unsupported by any apparent investigation – that Mr. Duncan had lied about being assaulted in the past.

[4] Mr. Duncan was apparently removed from the general population and placed in administrative segregation on more than one occasion.  However, Mr. Watts has indicated that he was involved in only one of these instances, and Mr. Duncan has not refuted that assertion.  Accordingly, the Court limits its analysis on this issue to the single incident in which Mr. Watts acknowledges his involvement.

11

activity protected by the First Amendment. *See Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996). Although Mr. Watts makes an abbreviated argument that non of Mr. Duncan's grievances were ever signed by Mr. Watts and offers the unclear assertion that "no grievances [were] filed during the time frame of Duncan's administrative segregation," it is undisputed that Mr. Duncan filed numerous grievances, including only a few weeks before the May 9, 2006 incident in which Mr. Watts assigned Mr. Duncan to segregation. Thus, the Court finds that Mr. Duncan can establish the first element of a retaliation claim.

Mr. Watts makes a perfunctory argument with regard to the second element. He contends that assignment to administrative segregation would not "chill a person of ordinary firmness" of the desire to file grievances because the record reflects that doing so did no chill Mr. Duncan's will. This argument mistakenly assumes that Mr. Duncan is a "person of ordinary firmness," when the record in this (and other) cases indicates he is unusually dogged in his accusations of misconduct. In any event, the Court finds that Mr. Watts has failed to identify evidence regarding the consequences of placement in administrative segregation, and thus, has failed to carry his burden of showing that there can be no genuine dispute of fact as to whether such an assignment would chill an ordinary inmate's First Amendment activities.

The third element of the claim presents more difficulty for Mr. Duncan. To show the requisite causal connection between his First Amendment activity and Mr. Watts' decision to assign him to segregation, Mr. Duncan must show that Mr. Watts' explanation for his assignment to segregation is insincere or pretextual. *Harvey v. Baker*, 242 Fed.Appx. 547, 553 (10th Cir. 2007) (unpublished) (employment context); *Meyer v. Board of County Commissioners*, 482 F.3d 1232, 1244 (10th Cir. 2007) (proof the proffered explanation was false could warrant inference or

retaliation). Here, Mr. Watts' proffered reason for removing Mr. Duncan from the general population was that Mr. Duncan was making false allegations about Mr. Magelssen to other inmates, an act that Mr. Watts believed had the effect of undermining Mr. Magelssen's authority. Mr. Duncan has not come forward with evidence that would show this proffered explanation to be false. He does not, for example, dispute that he made his accusations about Mr. Magelssen known to other inmates, and while Mr. Duncan may dispute that those accusations were false, he does not identify any evidence that would establish that <u>Mr. Watts</u> did not believe the accusations to be false. Because this element focuses on Mr. Watts' intent, the issue is whether Mr. Watts <u>believed</u> Mr. Duncan's allegations to be false, not whether the allegations actually were. *See e.g. Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) ("in evaluating pretext, the relevant inquiry is not whether [the] proffered reasons were wise, fair or correct, but whether [the decisionmaker] honestly believed those reasons and acted in good faith upon those beliefs"). Moreover, Mr. Duncan has not pointed to any evidence that Mr. Watts was actually aware of his grievances; as Mr. Watts' motion points out, Mr. Watts was not a signatory on any of the numerous grievances Mr. Duncan filed.

Considering all the evidence, the Court finds that Mr. Duncan has failed to demonstrate the existence of a genuine issue of fact as to whether Mr. Watts' decision to remove him from the general population on May 9, 2006 was done in retaliation for Mr. Duncan having exercised his First Amendment rights by filing grievances. Accordingly, Mr. Watts is entitled to summary judgment on this claim.

4. Substantive Due Process claim

Finally, the Court turns to a possible claim by Mr. Duncan that the Defendants deprived him of Substantive Due Process in his COPD hearings by destroying video evidence of assaults on Mr. Duncan by Mr. Magelssen. The Court notes that this claim was not expressly pled by Mr. Duncan, and was first recognized by the Court as a possible interpretation of the facts alleged in Mr. Duncan's *pro se* complaint. *Docket* # 27. As a result, the claim is somewhat unformed.

The Defendants raise two arguments with regard to this claim: that Mr. Duncan is collaterally estopped from asserting it because the issue has been conclusively resolved against him during litigation in the state courts, and, in the alternative, that he cannot show either of the Defendants destroyed any evidence. The Court need not reach the collateral estoppel argument, because it finds that the Defendants have come forward with evidence contending that they did not destroy and video evidence, and Mr. Duncan's response fails to adduce contrary evidence, relying instead on bald, unsupported conclusions. Accordingly, the Court finds that the Defendants are entitled to summary judgment on this claim.

For the foregoing reasons, the Defendants' Motion for Summary Judgment is granted in part, insofar as they are entitled to summary judgment on Mr. Duncan's First Amendment retaliation and Substantive Due Process claims, and denied in part insofar as Mr. Duncan's Eighth Amendment claims against both Defendants will require trial.

**C. Mr. Duncan's Motions**

Mr. Duncan makes two pretrial motions that the Court takes up at this time. First, he has filed a "Motion to Order the Defendants to Stop Harassing the Plaintiff's Witnesses" **(# 56)**. He

14

alleges that the Defendants assigned one of his witnesses, Mr. Punk, to administrative segregation for "writing a restraining order" against a corrections officer who is not involved in this action. Mr. Duncan alleges "they are harassing my witness for writing a restraining order" and requests that the Court "order the defendants to replace [Mr. Punk] back in to population and give him back ALL of [his 'stuff'] and give him back his job in the programs building . . . and place [the corrections officer involved] . . . somewhere else than around my witness."

The Court denies this motion. Court exercise a great deal of restraint in interfering with the day-to-day decisions required of prison administrators, *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979), including decisions as inmate discipline and assignment. By Mr. Duncan's own admission, Mr. Punk was placed in segregation not because he is a witness in this case, but because he "wrote a restraining order" against a corrections officer. Because there is no showing that the decision with regard to Mr. Punk has any connection to this case, the Court denies Mr. Duncan's request.

Finally, Mr. Duncan files a Motion In Limine (**# 57**), requesting several items of relief. First, he moves for exclusion at trial under Fed. R. Evid. 404(b) of "anything about the plaintiffs' [or his witness'] past or present criminal record or disciplinary history." The Court denies this request without prejudice. Determination of whether evidence is admissible under Rule 404(b) (or many other evidentiary rules) cannot be made in the abstract; it is necessary for the Court to know both the specific item of evidence that is sought to be elicited and the specific factual context in which the evidence is sought. These matters generally cannot be determined until the time of trial. Thus, the Court denies this portion of Mr. Duncan's motion. He may raise a timely

15

objection under the Federal Rules of Evidence at trial when and if that evidence is sought to be elicited.

Next, Mr. Duncan requests that "the defendants . . . be held apart from each other and out of the courtroom so they cannot hear what the other ones are saying." It is customary for the Court to order the sequestration of <u>witnesses</u> in this manner upon the request of either party. However, sequestration of <u>parties</u> is unorthodox and impractical for a variety of reasons. Among other things, excluding a party from the trial in his or her own case would almost certainly be a fundamental violation of Due Process. Accordingly, to the extent Mr. Duncan requests that the Defendants be sequestered, that request is denied.

Mr. Duncan raises a dispute with regard to a request by the Defendants that he stipulate to the fact that "Inmates are not allowed to remove food from the chow hall." A party is under no obligation to stipulate to a fact if he is prepared to submit evidence to contradict it. The Court can discern no particular request for relief with regard to this issue, except perhaps Mr. Duncan's request that the Court obtain copies of a particular prison rule for him. The Court denies that request, as it would be inappropriate for the Court to attempt to gather evidence on behalf of a party.

Mr. Duncan asks that "the newspapers and t.v. staff not be allowed in the courtroom." Trials are presumptively open to any member of the public, and Mr. Duncan has not articulated good grounds to exclude any member of the public or the press from trial. This request is denied.

Mr. Duncan requests that the Court provide an easel and drawing pad for use during his testimony. The Court has such material available as a matter of course and it will be available to him.

Mr. Duncan "asks this Court to order the Defendants to stop harassing my witnesses and return them to the population." The Court assumes that this request duplicates Mr. Duncan's motion at Docket # 56, and it is denied for the same reasons as that motion.

Finally, Mr. Duncan requests that the Court grant Mr. Duncan's requests for subpoenas and that the Court "have the Plaintiff's witnesses transported to court . . . and have them placed where the defendants cannot harass them." This request duplicates a pending motion by Mr. Duncan for subpoenas and/or writs of *habeas corpus ad testificandum* **(# 55)** and will be addressed by the Court in conjunction with that motion.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(# 33)** is **GRANTED IN PART**, insofar as the Defendants are entitled to summary judgment on Mr. Duncan's claims for First Amendment retaliation and deprivation of Substantive Due Process, and **DENIED IN PART**, insofar as Mr. Duncan's Eighth Amendment claim against each Defendant will require trial. Mr. Duncan's Motion to Order the Defendants to Stop Harassing My Witnesses" **(# 56)** is **DENIED**, and Mr. Duncan's Motion in Limine **(# 57)** is **DENIED** on the terms set forth herein.

Dated this 16th day of March, 2009

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge